CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JAN 3 1 2008

JOHN F CORCORAN, CLERK
BY: /s/ K. Dotson
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| ANITA WILCHER, | Case No. 5:06cv00124 |
| *Plaintiff* | **REPORT AND** |
| v. | **RECOMMENDATION** |
| MICHAEL J. ASTRUE,[1] | By: Hon. James G. Welsh |
| Commissioner of Social Security, | U.S. Magistrate Judge |
| *Defendant* | |

The plaintiff, Anita Wilcher, brings this action pursuant to 42 U.S.C. § 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. 405(g).

The Commissioner's Answer was filed on May 4, 2007 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered three days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] On February 12, 2007, Michael J. Asture became the Commissioner of Social Security. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, and 28 U.S.C. § 405(g) he is substituted, in his official capacity, for Jo Anne B. Barnhart, the former Commissioner.

Addressing the reason why she believes the final decision of the Commissioner ought to be either reversed or remanded, the plaintiff's memorandum of points and authorities was filed on June 6, 2007. Therein, she contends that the final decision of the Commissioner was based on an impermissible substitution of the administrative law judge's ("ALJ's") judgment for the opinions of treating physicians concerning both the nature and severity of her condition. Additionally, she contends that the decision was erroneously based on an "unfair" and "selective" consideration of the medical record. No written request was made for oral argument.[2] On June 28, 2007 the Commissioner filed his Motion for Summary Judgment and supporting memorandum. The undersigned having now reviewed the administrative record, the following report and recommended disposition are submitted.

**I. Standard of Review**

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement to a period of disability insurance benefits pursuant to the Act. "Under the...Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F. 3$^d$ 171, 176 (4th Cir.2001) (*quoting Craig v. Chater*, 76 F. 3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. "*Mastro*, 270 F.3$^d$ at 176

---

[2] Paragraph 2 of the court's Standing Order No. 2005-2 directs that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time of his or her brief is filed.

(*quoting Laws v. Celebrezze,* 368 F. 2$^d$ 640, 642 4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id. (quoting Craig v. Chater,* 76 F. 3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F. 3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

The record shows that the plaintiff protectively filed her application for a period of disability insurance benefits on or about May 21, 2003 claiming disability beginning November 18, 2002 on the basis of multiple medical problems, including histoplasmosis,[3] arthritis, degenerative disc disease, chronic pain, high blood pressure, and shortness of breath. (R.87-89,100-108.) After her application was denied, both initially and on reconsideration, an administrative hearing on her application was held on August 17, 2004 before an ALJ (R.43,57-69, 77-81,583-630.) At the hearing, the plaintiff was present, testified and was represented by counsel. (R.43,75-76,583-630.)

---

[3] Histoplasmosis is a fungal condition. In its primary acute form, it may be asymptomatic or may cause acute respiratory symptoms similar to a severe cold or influenza, including fever, chest pains, a general ill feeling, and a dry and nonproductive cough. Treatment consists of antifungal therapy. Professional Guide to Diseases, 217-18 (8th ed. 2005).

3

Utilizing the agency's standard five-step inquiry,[4] the plaintiff's claim was subsequently denied by written administrative decision on October 13, 2004. (R.43-56).

Based on the plaintiff's earnings record and the plaintiff's testimony that she unsuccessfully attempted to return to work on a part-time basis in February 2003, at the first decisional step the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 18, 2002. (R.44,55.)

After outlining the medical evidence, at step-two the ALJ concluded that the plaintiff had several "severe" impairments, including histoplasmosis with an expected lifelong requirement for immuno-suppressive therapy, osteopenia,[5] lumbar disc disease, and disorders of the right knee which will likely require a future knee replacement. (R. 50,55). Her depression, however, was determined by the ALJ to have only a minimal impact on her day-to-day functional abilities and not to be "severe" within the meaning of the Act. (R. 50-51.)

At step-three, the ALJ concluded that the plaintiff had exhibited no condition which satisfied

---

[4] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry requires a determination of whether, based upon the medical evidence, the individual has a severe impairment. 20 C.F.R § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d), If so, the person is disabled; if not, step-four is a consideration of whether the person's impairment prevents him or her from returning to any past relevant work. 20 C.F.R § 404.1520(e); 20 C.F.R § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F. R. § 404.1520(f).

[5] A thinning of bone mass which has not become as severe as osteoporosis.

the requirement of a medical listing. As part of this finding, the ALJ noted both that no treating or examining source had mentioned findings equivalent in severity to the criteria of any listing, and that he had given "[s]pecific attention" to the musculoskeletal impairments contained in Listing 1.00. (R. 51,55). The ALJ, however, made no mention of any specific consideration having been given to any possible medical equivalency to the immune system impairments contained in Listings 14.01 through 14.09.

After next assessing the plaintiff's activities, noting her past relevant work to have been exertionally medium to heavy and determining that her limitations made the agency's Medical-Vocational Guidelines ("grids") inapplicable, the ALJ concluded that the plaintiff retained the capacity to do a range of sedentary work.[6] (R. 53, 55).

After issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review and later submitted additional medical information in support of this request, including *inter alia* a letter from Dr. Gregory Townsend [7] describing the nature of the plaintiff's immune system impairment and supporting her disability application. (R. 38,13-38,467-582). Therein, Dr. Townsend described the plaintiff's infectious medical condition as "idiopathic CD4 cell lymphocytopenia with a resultant disseminated histoplasmosis." (R.9). He described her as "in

---

[6] Sedentary work involves lifting items weighing up to 10 pounds and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing may be necessary to carry-out the job duties. *See* 20 C.F.R. § 404.1567(a).

[7] Dr. Gregory C. Townsend is an associate professor of medicine, University of Virginia, School of Medicine and he is Associate Director, Division of Infectious Diseases, Department of Medicine, University of Virginia Health System, Charlottesville, Virginia.

5

effect functionally an AIDS patient without HIV" suffering from "chronic fatigue secondary to chronic immunosuppresive condition and infection" and, in his opinion, unable to work. (R. 9-10).

Finding "no reason to review" the ALJ's decision, the Appeals Council denied the plaintiff's request for review. (R. 5-8). In doing so, the Appeals Council made no reference either to Dr. Townsend's letter or to other post-hearing information documenting the plaintiff's continuing medical treatment both for disseminated histoplasmosis and degenerative joint disease. The ALJ's unfavorable decision, therefore, stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts

The plaintiff was born in 1955 and was forty-nine years of age[8] at the time of the ALJ's decision. (R. 44,58.) She completed high school and worked for more than twenty years as a mail room clerk. (R. 99,109,615.) As performed, this work was exertionally medium to heavy and without any transferable skills. (R. 53,55,624.)

Her medical records document a history of treatment for significant right knee pain and

---

[8] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c); 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(h)(3-4). Although age is generally a chronological determination, the agency's regulations provide that age will not be applied "mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). When an individual is within a few months of reaching age fifty (50), for example, he or she should be given the benefit of a "borderline" age determination under 20 C.F.R. § 404.1563(b) as an individual closely approaching advanced age. *Jolly v. Barnhart*, 465 F. Supp. 2d 498, 505 (DSC, 2006).

6

discomfort. Arthroscopic surgery in November 2001 provided some temporary improvement; however she continued to require ongoing treatment with anti-inflamatories, Hyalgan or similar injections, and the use of a knee brace. (*E.g.*, R. 154-156,158,160-169,190,199,256,300,303-305, 329-335,337,368-370,339,549-552,555-557,580.) By June 2003, Dr. George Godette, the plaintiff's treating orthopaedic surgeon, noted that the plaintiff exhibited "really no [right knee] joint space" and would require a total knee replacement "in the future." (R.339.) Because of this "complete loss" of right knee joint space, Dr. Godette limited the plaintiff to activities "as tolerated" and suggested that she consider knee replacement surgery. (R.580.)

Similarly, the plaintiff's medical records document a long history of pharmacologic treatment for degenerative lumbar disc disease and attendant chronic low back pain. (R. 157-159,163,170,173-175,243,247,258,274-275,279,281-283,287,321,329-331,337,339,549,555,558-560,580.) Disc bulges at L3-4 and L4-5 and moderate hypertrophic degenerative changes at L4-5 and L5-S1 facet joints were demonstrated in March 2002 both by lumbar X-rays and a lumbar MRI. (R.279,281.) The medical records suggest no improvement in this chronic pain condition over time and they indicate some exacerbation in the condition with the development of a lower extremity radiculopathy. (R.323.)

Central to her claim for a period of disability insurance benefits, the plaintiff's records also document a significant longitudinal history of treatment for a compromised immune system and for persistent histoplasmosis-related symptoms, including chest pains and discomfort, fevers, night

7

sweats, chronic fatigue and generalized weakness, abnormally low CD4[9] counts, and diarrheal episodes. (*E.g.,* R. 143-153, 171-173,179,185-187,189-199,206,209,216-242,244-245,248-255,258-267,269-273,329,340-345,349-357,368,373,384-386,389-394,398-399,402,418-419,426-428,442-446,462-466,485-488,497-499,516-519,524-527,540-546,562-579.) Since December 2002 the chronic nature of this illness has required treatment with itraconazole, a synthetic antifungal agent. (R.359-361,401,412,,432,389.) And as noted in the UVaMC Infectious Disease Clinic records, because of the "persistent" nature of the condition, it is anticipated that this medication regime will remain in place for the remainder of her life. (R.359-360.)

At the end of June 2003, approximately seven months after diagnosis of this infectious lung disease, a state agency physician reviewed the plaintiff's then-available medical records and opined that the plaintiff "should recover sufficiently" within twelve months to perform "at least light work activity." (R.309.) Although the plaintiff is described as also having "arthritis in [her] knees, 2 bulging discs [and] degenerative disc disease (R.309), these conditions were not otherwise meaningfully mentioned or addressed as part of the reviewer's functional assessment. (*See* R.308-315.) Based on the same medical information, the initial reviewer's opinion was adopted without any modification or amplification by a second state agency physician two months later. (R.315.)

One year after the plaintiff was first determined to have contracted an active histoplasmosis infection, after a full year of regular laboratory blood work (*e.g.,* R.175-189,193,199-200,203-205, 207-216,382-383,387-388,395-396,403-407,413-417,420-425,430) and after a full year of

---

[9] Also called "T4 counts."

8

monitoring the disease process and its related symptoms (*e.g.*, R.146-153,191,198,384-386,389-390,391-394,398-399,401,411,419), the plaintiff's primary care physician, Dr. David Chernoff, concluded in November 2003 that this condition was "unlikely to change." (R.324.) In his opinion, the nature of her compromised immune system and its associated symptomology, including chronic fatigue and weakness, in combination with the "polyarthralgias" and functional limitations associated with her acute right knee condition and degenerative disc disease, functionally limited her to less than that required for sedentary work activity on a regular and sustained bases. (*See* R. 304-308.)

Four months later, in March 2004, Dr. Chernoff followed up his functional assessment with an amplifying medical statement. Therein, he stated that the plaintiff's chronic knee and back pain "limit[ed] her ability to perform most physical activities," and that "[a]mongst the effects of [disseminated histoplasmosis] is that she experiences a profound level of fatigue...which prevents her from being employed in even sedentary activities." (R.329).

Addressing specifically her degenerative disc disease and degenerative right knee joint disease, in July 2004 a functional assessment was made by the plaintiff's's treating orthopaedist, Dr. George Godette. Therein, he recorded his determination that these conditions limited the plaintiff to work which permitted her to sit, stand, and shift positions *at will*, which permitted unscheduled breaks, which required little or no stooping or twisting, and which required only occasional lifting of more than ten pounds. (R.433-438).

At the hearing, the plaintiff testified that she stopped working in November 2002, when she

9

"got sick," and that she tried unsuccessfully to return to work on a part-time basis for "about a month" in March 2003. (R. 589-591.) She stated that her illness is an incurable fungal infection which requires ongoing testing of her blood and urine and ongoing suppressant drug treatment. (R. 592-594.) She stated that it causes her to have a persistent low-grade fever along with chronic fatigue and weakness. (R. 595,603-605.) In addition, she described how her orthopaedic problems restricted her mobility, her ability to sit for prolonged periods, and her ability to lift and carry. (R. 596,598-600.)

In support of her application, the plaintiff's mother-in-law, Elsie Doyle, also testified. Mrs. Doyle stated that since the plaintiff first got "sick" in November 2002, she has had recurrent sick spells lasting three or four days, and whenever these occur family members are available to help. (R. 607-609.) This witness also testified about the plaintiff's functional limitations, including her ongoing use of a knee brace. (R. 609-610.)

Testifying as a vocational witness, Gerald Wells described the plaintiff's vocationally relevant past jobs as a postal assistant to be semi-skilled and medium in exertional level. (R. 614-615). As performed, he similarly described this work as semi-skilled and exertionally heavy. (R. 614-615,624). Posed as a hypothetical question, the vocational witness was asked whether any work existed in significant numbers in the national economy which could be performed by an individual with the plaintiff's vocational profile, with an ability to do only sedentary work in a "conditioned"

10

environment, with the requirement that the job permit a sit/stand option,[10] and with the "flexibility" to alter her position at a work station "every half hour or so." (R. 615,624-626). Consistent with this question, Dr. Wells testified that such an individual would be able to work as a receptionist, a telemarketer, or as a sedentary cashier. (R. 625-626). If, however, the fatigue and weakness described by the plaintiff is also considered, Dr. Wells opined that she would not be functionally able to perform any of these jobs on a regular and sustained basis. (R. 626-627).

During the pendency of the plaintiff's request for Appeals Council review, a number of additional medical records were submitted for consideration, including Dr. Chernoff's primary care records covering the February and August 2005 period (R. 22-38,481-546), twelve pages of Augusta Pain Management records dated in 2002 and 2004 (R. 549-560), UVaMC Infectious Disease Clinic treatment notes covering the months of January and February 2005 (R. 561-579), and Dr. Godette's March 14, 2005 office note. (R. 580). In addition, the Appeals Council received correspondence from Dr. Gregory Townsend describing the nature and functional impact of her immune system impairment (R. 580) and reconfirming correspondence from her primary care physician (R. 581).[11]

**IV. Analysis**

---

[10] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler*, 762 F.2d 1516. 1518 (11th Cir. 1985).

[11] Since the Appeals Council considered this evidence in reaching its decision not to grant review, on appeal this court should properly also consider this evidence in determining whether substantial evidence supports the Commissioner's final decision. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Case 5:06-cv-00124-SGW-JGW   Document 11   Filed 01/31/08   Page 11 of 19   Pageid#: 67

Citing 20 C.F.R. § 404.1527 and Social Security Regulation ("SSR") 96-2p, the plaintiff's primary argument is that the ALJ improperly refused to give the required credit to the opinions of her treating physicians concerning the severity of her multiple medical conditions and the attendant functional limitations. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Citing subsection (d) of the same administrative regulation, the Commissioner argues that the ALJ was entitled to discount these opinions on the grounds that they were not well-supported by other medical evidence. A full review of the entire record fails to support the Commissioner's contention. Moreover, the ALJ's decision, upon which the Commissioner relies, is contrary to the reasoned conclusions of every treating doctor whose opinion was solicited.

It is true, as the Commissioner notes in his memorandum, that it is the ALJ's responsibility to weigh the evidence, including the medical evidence, and to resolve any conflicts which might appear therein. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Likewise, it is true, as the Commissioner also notes, that the agency's regulations permit the ALJ to assign little or no weight to any medical opinion, even one from a treating source, based on the factors set forth in 20 C.F.R. § 404.1527(d). However, the ALJ may not reject medical evidence either for no reason or for the wrong reason, and it is his responsibility to explain sufficiently his rationale and demonstrate that the record supports his findings. *See King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).

Although the treating physician's rule, upon which the plaintiff relies in this case, is not absolute, "[c]ourts typically accord greater weight to the testimony of a treating physician because

12

the treating physician has necessarily examined the [individual] and has a treating relationship with the [individual]." *Hines v. Barnhart,* 453 F.3$^d$ 559, 563 (4th Cir. 2006) (*quoting Mastro v. Apfel,* 270 F.3$^d$ 171, 178 (4th Cir. 2001) (*citing* 20 C.F.R. § 404.1527) (internal quote marks omitted). The Fourth Circuit has also recognized the appropriateness of giving great weight to the opinion of a treating physician, where "such opinion reflects expert judgment based on continuous observation of a patient's condition over a prolonged period of time." *Robertson v. Barnhart,* 2006 U.S. Dist. LEXIS 28643, *8, 110 Soc. Sec. Rep. Service 551 (WDVa 2006) ) (*citing Smith v. Schweiker,* 795 F.2$^d$ 343, 345-46 (4th Cir. 1986), and *Mitchell v. Schweiker,* 699 F.2$^d$ 85, 187 (4th Cir. 1983)).

In other words, an ALJ may choose to give a lesser weight to the testimony of a treating physician only when the record demonstrates persuasive evidence to the contrary. *E..g., Foster v. Heckler,* 780 F.2$^d$ 1125, 1127 (4th Cir. 1986). If, however, the treating physician's opinion is supported by clinical evidence or is consistent with other substantial evidence, the ALJ is obligated to accord the opinion controlling weight. *Mastro v. Apfel,* 270 F. 3$^d$ 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

Therefore, to fulfill this fact finding obligation, the ALJ must consider a number of factors, including whether the physician has examined the applicant, whether there exists an ongoing physician-patient relationship, whether the diagnostic and clinical record supports the opinion, whether the opinion is consistent with the medical record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. And his "decision must contain specific reasons for the weight given to the treating source's medical opinion." SSR 96-2p.

In the case now before the court, the Commissioner argues that the ALJ met this analytical obligation in the case of Dr. Chernoff's opinion because the medical record showed that the plaintiff had two "normal" laboratory chemistries (R.190-191,425) during the first six-months after treatment was begun the histoplasmosis infection, that the results of February 2004 laboratory studies were described by Dr. Chernoff as "good" (R.362), and that radiographic studies disclosed only "mild" degenerative disc disease and "good" range of right knee motion with a well-maintained lateral joint space (R.330,333).

According to the Commissioner, the ALJ properly also discounted Dr. Godette's opinion concerning the plaintiff's functional limitations on the basis the same June 2004 radiographic studies (R.330), a November 25, 2003 office record of Dr. Chernoff in which he described the plaintiff's mobility as "normal" to have normal lower extremity motor strength (R.384-386), and Dr. Godette's December 2003 office record in which he noted that the plaintiff was able to walk on her toes and to demonstrate no quardriceps muscle abnormality (R.333).

Although the court cannot undertake to re-weigh the evidence, consistent medical evidence in this case evidences a plaintiff with documented ongoing symptoms of an active histoplasmosis infection for which she requires regular treatment. Similarly, consistent medical evidence in this case evidences a plaintiff with documented ongoing symptoms related to significant degenerative orthopaedic conditions. In these circumstances, the social security regulations and rulings do not permit the ALJ to afford less weight to a treating physician's opinion on the ground that it lacks support from objective sources such as clinical testing or laboratory findings.

14

Dr. Godette's treatment of the plaintiffs degenerative right knee condition began 2001; it included surgery, steroid injections, and prescription pain relievers; it included multiple office examinations, and resulted in his determination that the plaintiff, at much too young an age, would require a total knee replacement. The longitudinal record of the plaintiff's active medical cart related to her disseminated histoplasmosis is equally significant, both the treatment and monitoring by her primary care physician and her treatment at the UVaMC's Infectious Disease Clinic. The relevant medical records show that the plaintiff was Dr. Chernoff's patient both before and after the December 2002 diagnosis of this chronic infectious condition; they show that he was kept apprised of her specialized treatment initially at Augusta Medial Center subsequently through the Infections Disease Clinic, and they show that he monitored her laboratory studies. Dr. Chernoff's records also document the plaintiff's significant ongoing problems related both to her medical degenerative joint and lumbar disc conditions and her chronic histoplasmosis infection, including profound fatigue, chronic diarrhea, generalized weakness, a persistent low grade fever, weakness of the knee, and significant knee and back pain.

In its denial of the plaintiff's request for review, the Appeals Council stated that it "found no reason" (R.5) to grant the request, and it stated that the information submitted in connection with her review request were "found . . . not to provide a basis for changing the [ALJ's] decision." (R.5-6.) This summary denial of review and the attendant absence of any discussion of the post-hearing medical submissions, including Dr. Townsend's letter describing both the nature and the functional impact of the plaintiff's immune system impairment, strongly suggests that the Appeals Council elected to rely, as the ALJ did (R.49), on Dr. Ison's November 2003 hopeful expression of a

15

favorable treatment outcome.

Such reliance is misplaced. Dr. Ison was then a post doctoral fellow being supervised in his clinical practice by Dr. Townsend. His belief that the plaintiff "should" be able to return to normal activities "overtime"( R. 439) was never endorsed by Dr. Townsend, and unfortunately the plaintiff's disease did not respond in the positive way Dr. Ison had hoped.

By responding as it did, the Appeals Council also ignored the fact that Dr. Townsend's opinions reflect those of a specialist in infectious diseases and a senior supervising faculty member.

In summary, each of the Commissioner's arguments fails to constitute a persuasive basis upon which to discount the opinions of Drs. Chernoff, Godette or Townsend. Each of these medical opinions is supported by the medical record when it is considered as a whole. *See Johnson v Barnhart*, 434 F.3$^d$ 650, 654 (4th Cir. 2005) (*citing* 20 CFR. § 404.1527). Each is based on a significant longitudinal record of examination, treatment and observation, and each is supported by clinical and other relevant medical evidence.

In addition, the opinion of Dr. Townsend concerning the nature and functional impact of the plaintiff's disseminated histoplasmosis is based on significant training and expertise in the diagnosis and treatment of infectious diseases. Likewise, the opinion of Dr. Godette concerning the nature and functional impact of the plaintiff's degenerative joint and disc disease is also based on significant training and expertise as a orthopaedic surgeon.

16

The Commissioner's reliance on the general principle that the determination of disability is an issue reserved to the Commissioner (20 CFR. § 404.1527(e)(1)) is equally misplaced in this case. The agency's regulations require the ALJ "to give good reasons" why, and on the basis of the entire record, a treating physician's opinion should be discounted. 20 CFR § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

As outlined in considerable detail herein, the medical record in this case simply fails to provide the requisite good reasons. Moreover, the medical record provides precisely the detailed, longitudinal picture of [the plaintiff's] medical impairment" upon which the agency's regulations state that Drs. Townsend, Godette and Chernoff can appropriately predicate their professional opinions and which entitles each to considerable decisional weight. 20 C.F.R. § 404.1527(d)(2).

As the plaintiff correctly argues, these treating source opinions are consistent with the symptomology and the nature of the plaintiff's objectively diagnosed degenerative orthopaedic conditions and objectively diagnosed chronic histoplasmosis infection. Each is based on numerous examinations and professional observations over a number of years, and, perhaps, most importantly, each is consistent with the observed changes in her conditions over time.

Therefore, the final decision should be reversed and the case remanded to the Commissioner solely for the purpose of calculating and paying benefits consistent with the court's decision.

### V. Proposed Findings of Fact

17

Case 5:06-cv-00124-SGW-JGW Document 11 Filed 01/31/08 Page 17 of 19 Pageid#: 73

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The Commissioner's final decision failed to give proper consideration and weight to Dr. Townsend's medical opinions;

3. The Commissioner's final decision failed to give proper consideration and weight to Dr. Chernoff's medical opinions;

4. The Commissioner's final decision failed to give proper consideration and weight to Dr. Godette's medical opinions;

5. The Commissioner's final decision failed to consider properly the nature and severity of the plaintiff's disseminated histoplasmosis and its associated functional limitations;

6. The Commissioner's final decision failed to consider properly the nature and severity of the plaintiff's degenerative joint disease and degenerative disc disease and their associated functional limitations;

7. The Commissioner's final decision failed to consider properly the plaintiff's physical, and pain-related complaints associated with her diagnosed conditions;

8. Substantial medical and activities evidence does not support the Commissioner's findings concerning the plaintiff's symptoms and functional limitations;

9. Substantial evidence does not support the Commissioner's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

10. Substantial evidence does not exist to support the Commissioner's finding that through the decision date the plaintiff retained the residual functional capacity to perform a range of sedentary work activity;

11. The plaintiff has met her burden of proving disability since November 18, 2002, her disability onset date; and

12. The final decision of the Commissioner should be reversed.

18

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING the final decision of the Commissioner, GRANTING JUDGMENT to the plaintiff, DENYING the defendant's motion for summary judgment, and REMANDING this matter to the Commissioner for calculation and payment of benefits.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 31st day of January 2008.

s/ *James G. Welsh*
U.S. Magistrate Judge